# Exhibit A

| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| --- | --- |
| WAKE COUNTY | SUPERIOR COURT DIVISION |
| | 25 CVS _____ -910 |

FRANK CHRISTENSEN,　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　 )
　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　)　　**COMPLAINT**
　　　　　　　　　　　　　　　　)
RACHEL HANNAH BRODER,　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　Defendant.　　　　　　)
　　　　　　　　　　　　　　　　)

NOW COMES Plaintiff, FRANK CHRISTENSEN ("Christensen" or "Plaintiff"), complaining of the Defendant, RACHEL HANNAH BRODER ("Broder" or "Defendant") and alleges as follows:

### PARTIES AND JURISDICTION

1. Plaintiff is an individual citizen and resident of North Carolina with a principal residence located in Chapel Hill, Orange County.

2. Upon information and belief, Defendant is a natural person and resident of the State of Pennsylvania, having a principal residence located at 1085 Oak Ridge Dr., Blue Bell, PA 19422.

3. This Court has jurisdiction over the subject matter and parties in this action.

4. Venue is properly had in this Court of Wake County pursuant to N.C. Gen. Stat. § 1-82.

### FACTUAL ALLEGATIONS

5. The allegations contained in the preceding paragraphs are realleged and incorporated herein by reference as if fully set forth.

6. On or around October 4, 2023, Plaintiff and Toll Southeast LP Company, Inc. ("Toll") entered into an Agreement of Sale (the "Contract") for Toll to construct, and Plaintiff to

purchase, a home on Lot 79 of the Regency at Olde Towne subdivision having an address of 2073 Abbeyhill Drive, Raleigh, NC 27610 (the "Home").

7. The Regency at Olde Towne subdivision is marketed as a "low-maintenance 55+ community for active adults."

8. Plaintiff selected the Regency at Olde Towne subdivision, after considering other builders and subdivisions, because of, particularly, but not limited to, Toll's commitment to "aging-in-place" for seniors.

9. From the outset of Plaintiff's relationship with Toll, Plaintiff communicated that a wheelchair accessible, "zero threshold" shower was a requirement for the primary bathroom in the Home.

10. Toll assured Plaintiff that there were wheelchair accessible options for the primary bathroom.

11. During the initial negotiations for the Home, Plaintiff noted several discrepancies with the options and pricing.

12. In response, Toll agreed to apply certain discounts towards Plaintiff's purchase price for the Home.

13. Following Plaintiff's execution of the Contract, Plaintiff received a Home Initiation Order dated October 6, 2023 with the selected option of a "zero threshold shower" at "primary bathroom" for an extended price of $4,105.00.

14. Again on October 9, 2023, Plaintiff received Home Initiation Order dated October 6, 2023 with the selected option of a "zero threshold shower" at "primary bathroom" for an extended price of $4,105.00.

15. The Contract required Plaintiff to complete "colors, flooring, finishes, and other option selections within 60 days of execution of the [Contract] unless otherwise directed by [Toll]."

16. Design selections were intended to be completed via 3 Design Appointments with Toll's Design Studio.

17. At Plaintiff's first Design Appointment on November 2, 2023, Plaintiff discovered, for the first time, that the shower in the primary bathroom was not wheelchair accessible.

18. Plaintiff continued to work with Toll's representatives towards completing design selections while simultaneously seeking a resolution to the shower issue.

19. Throughout the process of finalizing the design for the Home, Plaintiff was in almost constant contact with Toll's representatives requesting information necessary to complete design selections.

20. Despite Plaintiff's attempts to finalize the design selections, Toll prevented Plaintiff from completing the design selections by failing to provide requested information and/or making unreasonable scheduling requests.

21. Despite Plaintiff's attempts, Toll purposely prevented Plaintiff completing the design of the home and attending all requisite design center meetings.

22. On January 17, 2024, Plaintiff met with the contractor for construction of the Home and discovered that the orientation of the home had been reversed without Plaintiff's knowledge.

23. To date, Plaintiff has paid deposits to Toll totaling $57,791.00.

24. At the time Plaintiff executed the Contract, he also executed a Promissory Note (the "Note") in the amount of $31,150.00 payable to Toll in the event of default by Plaintiff.

25. On March 14, 2024, Toll terminated the Contract and demanded payment under the Note via letter (the "Termination Letter"). A true and accurate copy of the Termination Letter is attached hereto as Exhibit "**A**."

26. Upon information and belief, Toll purposely prevented Plaintiff's performance under the Contract in order to terminate the Contract, retain Plaintiff's deposits, and demand payment under the Note, all with the intention of selling the Home for a higher price (without the discounts promised to Plaintiff).

27. The Termination Letter was authored and signed by Defendant.

28. The Termination Letter, in pertinent part (the "Defamatory Statements"), reads:

> Moreover, it has come to my attention that during your home purchase process, you have acted in a *disruptive* and *unprofessional* manner with Toll staff, both at the Sales Center and the Design Studio. You have been *abusive* to Toll employees and *used obscene language* in conversation with Toll employees, *including women*, on *several occasions*. That behavior is unacceptable to Toll and we will not subject our employees to it.

Exhibit A, ¶ 1 (emphasis added).

29. The Defamatory Statements authored by Defendant in the Termination Letter are false.

30. The Defamatory Statements authored by Defendant in the Termination Letter characterize Plaintiff as *disruptive* and *unprofessional* towards Toll staff at two locations. These statements are false.

31. The Defamatory Statements authored by Defendant in the Termination Letter accuse the Plaintiff of being *abusive* and using *obscene* language towards Toll staff, particularly towards *women*, thereby characterizing the Plaintiff, to a reasonable and ordinary person, as abusive or obscene with a sexual connotation. These statements are false.

32. The Defamatory Statements authored by Defendant in the Termination Letter accuse the Plaintiff of being abusive and using obscene language towards women on *several* occasions. These statements are false.

33. The Defamatory Statements authored by Defendant in the Termination Letter have caused Plaintiff to suffer ridicule, humiliation, public contempt, loss of reputation, mental anguish, mental pain, inconvenience, loss of enjoyment, and damage to the underlying financial transaction.

34. The Defamatory Statements authored by Defendant caused Plaintiff to lose the Home and deposits to Toll in the amount of $57,791.00 and are the basis upon which Toll now demands payment of $31,150.00 under the Note.

35. Upon information and belief, Defendant knew the Defamatory Statements were false.

36. Upon information and belief, Defendant misrepresented Plaintiff and the material facts related thereto in order to cause Plaintiff to lose the Home and deposits to Toll in the amount of $57,791.00.

37. Upon information and belief, Defendant's misrepresentations were reasonably calculated to cause Plaintiff to lose the Home and deposits to Toll in the amount of $57,791.00.

38. The Defamatory Statements were communicated to Plaintiff's attorneys and paralegals.

39. Upon information and belief, the Defamatory Statements were communicated to employees, agents, and representatives of Toll.

40. Upon information and belief, the Defamatory Statements were communicated to attorneys, paralegals, and legal staff of Toll.

41. Upon information and belief, discovery will reveal that the Defamatory Statements were published to more individuals.

## FIRST CLAIM FOR RELIEF
### (Libel Per Se)

42. The allegations contained in the preceding paragraphs are realleged and incorporated by reference as if fully set forth herein.

43. The Termination Letter, authored by Defendant, in pertinent part, reads:

> Moreover, it has come to my attention that during your home purchase process, you have acted in a *disruptive* and *unprofessional* manner with Toll staff, both at the Sales Center and the Design Studio. You have been *abusive* to Toll employees and *used obscene language* in conversation with Toll employees, *including women*, on *several occasions*. That behavior is unacceptable to Toll and we will not subject our employees to it.

Exhibit A, ¶ 1 (emphasis added).

44. The Defamatory Statements were published by the Defendant to individuals other than Plaintiff.

45. The Defamatory Statements were published in a writing. *See* Exhibit A.

46. The Defamatory Statements refer to Plaintiff.

47. The Defamatory Statements, when considered alone without innuendo, subject the Plaintiff to ridicule, contempt, and disgrace.

48. The Defamatory Statements are false.

49. At the time of publication, Defendant either knew the statements were false or failed to exercise ordinary care in order to determine whether the statements were false.

50. As a direct and proximate result of Defendant's Libel Per Se, Plaintiff is damaged in the amount of at least Twenty-Five Thousand Dollars ($25,000.00) to be proven at trial, plus interest at the highest amount allowed by law and all court costs.

51. Defendant's malicious and willful conduct was a direct and proximate cause of damages to Plaintiff, and Plaintiff is entitled to punitive damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

## SECOND CLAIM FOR RELIEF
### (Class 2 Libel)
### (In the Alternative)

52. The allegations contained in the preceding paragraphs are realleged and incorporated herein by reference as if fully set forth.

53. The Termination Letter, authored by Defendant, in pertinent part, reads:

> Moreover, it has come to my attention that during your home purchase process, you have acted in a *disruptive* and *unprofessional* manner with Toll staff, both at the Sales Center and the Design Studio. You have been *abusive* to Toll employees and *used obscene language* in conversation with Toll employees, *including women*, on *several occasions*. That behavior is unacceptable to Toll and we will not subject our employees to it.

Exhibit A, ¶ 1 (emphasis added).

54. The Defamatory Statements were published by the Defendant to individuals other than Plaintiff.

55. The Defamatory Statements were published in a writing. *See* Exhibit A.

56. The Defamatory Statements refer to Plaintiff.

57. The Defamatory Statements were published to third parties who understood that it conveyed a defamatory meaning.

58. The Defamatory Statements are false.

59. As a direct and proximate result of Defendant's Class 2 Libel, Plaintiff is damaged in the amount of at least Twenty-Five Thousand Dollars ($25,000.00) to be proven at trial, plus interest at the highest amount allowed by law and all court costs.

## THIRD CLAIM FOR RELIEF
### (Libel Per Quod)
### (In the Alternative)

60. The allegations contained in the preceding paragraphs are realleged and incorporated herein by reference as if fully set forth.

61. The Termination Letter, authored by Defendant, in pertinent part, reads:

> Moreover, it has come to my attention that during your home purchase process, you have acted in a *disruptive* and *unprofessional* manner with Toll staff, both at the Sales Center and the Design Studio. You have been *abusive* to Toll employees and *used obscene language* in conversation with Toll employees, *including women*, on *several occasions*. That behavior is unacceptable to Toll and we will not subject our employees to it.

Exhibit A, ¶ 1 (emphasis added).

62. The Defamatory Statements were published by the Defendant to individuals other than Plaintiff.

63. The Defamatory Statements were published in a writing. *See* Exhibit A.

64. The Defamatory Statements refer to Plaintiff.

65. The Defamatory Statements, when considered with innuendo, colloquium, and explanatory circumstances subject the Plaintiff to ridicule, contempt, and disgrace.

66. The Defamatory Statements are false.

67. Plaintiff has suffered economic loss as a result of the Defamatory Statements, namely, loss of the Home and deposits to Toll in the amount of $57,791.00.

68. As a direct and proximate result of Defendant's Libel Per Quod, Plaintiff is damaged in the amount of at least Twenty-Five Thousand Dollars ($25,000.00) to be proven at trial, plus interest at the highest amount allowed by law and all court costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays judgment of this Court as follows:

1. That Plaintiff have and recover of Defendant, pursuant to Plaintiff's First Claim for Relief for Libel Per Se, damages in the amount of at least Twenty-Five Thousand Dollars ($25,000.00) to be proven at trial, plus interest at the highest amount allowed by law and all court costs;

2. In the alternative, that Plaintiff have and recover of Defendant, pursuant to Plaintiff's Second Claim for Relief for Class 2 Libel, damages in the amount of at least Twenty-Five Thousand Dollars ($25,000.00) to be proven at trial, plus interest at the highest amount allowed by law and all court costs;

3. In the alternative, that Plaintiff have and recover of Defendant, pursuant to Plaintiff's Third Claim for Relief for Libel Per Quod, damages in the amount of at least Twenty-Five Thousand Dollars ($25,000.00) to be proven at trial, plus interest at the highest amount allowed by law and all court costs;

4. That the costs of this action be taxed against Defendant; and

5. That Plaintiff have and recover any such other relief as this Court deems just and proper.

Respectfully submitted, this the 11th day of March, 2025.

**ANDERSON JONES, PLLC**

/s/ *Todd A. Jones*
Todd A. Jones, NCSB #25593
Post Office Box 20248
Raleigh, NC 27619
Phone: (919) 277-2541
Fax: (919) 277-2544
tjones@andersonandjones.com
*Attorneys for Plaintiff*

## VERIFICATION

I, Frank Christensen, being first duly sworn, say that I am the Plaintiff in the above-captioned action, that I have read the foregoing Complaint and know the contents thereof, and that the same is true of my own knowledge except as to those matters and things therein stated upon information and belief, and as to those matters and things I believe them to be true.

_____
FRANK CHRISTENSEN

Sworn to and subscribed before me this

_10_ day of _March_, 2025.

_____
NOTARY PUBLIC – Signed

_Holly Xiao Silber_
NOTARY PUBLIC – Printed

My Commission Expires: _12-02-2029_

**HOLLY XIAO SILBER**
Notary Public
Wake Co., North Carolina
My Commission Expires Dec. 2, 2029



**Toll Brothers**
AMERICA'S LUXURY HOME BUILDER

RACHEL BRODER, ESQUIRE
ASST. VICE PRESIDENT AND COUNSEL

DIRECT DIAL: (215) 938-8073
FAX: (215) 938-8255
RBRODER@TOLLBROTHERS.COM

March 14, 2024

**VIA ELECTRONIC MAIL**
Frank Christensen
c/o Lindsey E. Powell, Esq.
Anderson Jones, PLLC
421 N. Blount Street
Raleigh, North Carolina 27601
Email: lpowell@andesonandjones.com

    Re:    Agreement of Sale ("Agreement") between Toll Southeast LP Company, Inc. ("Toll") and Frank Christensen ("Buyer") for property located at 2073 Abbeyhill Drive, Raleigh, NC 27610, Lot 0079, in the Toll Brothers community known as Regency at Olde Towne – Excursion Collection ("Property")

Dear Mr. Christensen:

    As you know, we wrote to you on February 22, 2024 regarding your default under the Agreement. You did not cure that default by finalizing your options and color selections. The Agreement of Sale was executed on October 5, 2023, and you attended your initial appointment at the Design Studio on November 2, 2023. Toll then met with you on multiple occasions in person at the Design Studio and via Zoom to discuss options and colors. You also visited our appliance provider on multiple occasions and have made numerous appliance related changes, many of which Toll cannot accommodate. Although the Agreement requires you to finalize options and color selections within 60 days of execution of the Agreement, Toll allowed you extra time to finalize your selections. As of February 22, 140 days since AOS, you still had not finalized your selections. Moreover, it has come to my attention that during your home purchase process, you have acted in a disruptive and unprofessional manner with Toll staff, both at the Sales Center and the Design Studio. You have been abusive to Toll employees and used obscene language in conversations with Toll employees, including women, on several occasions. That behavior is unacceptable to Toll and we will not subject our employees to it.

    As such, the Agreement is now terminated, and we are retaining your earnest money and option deposits and marketing the Property to others free and clear of any interests you may have in it. In addition, we hereby request payment of the promissory note under the Agreement in the amount of $31,150.00 that became due and payable upon your default. Please remit payment within fourteen (14) days to Toll Southeast LP Company, Inc. at the address listed below.

    If you have any questions pertaining to the above, please have your attorney contact me.

Sincerely,

*Rachel Broder*
Rachel Broder