IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-CV-345-FL

| | |
|---|---|
| FRANK CHRISTENSEN,<br><br>Plaintiff,<br><br>v.<br><br>RACHEL HANNAH BRODER,<br><br>Defendant. | **BRIEF IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO RULE 11(c)** |

Defendant Rachel Hannah Broder ("Ms. Broder"), by and through her undersigned counsel, Fox Rothschild LLP, submits this brief in support of her motion pursuant to Rule 11(c) of the Federal Rules of Civil Procedure for the Court to sanction Plaintiff Frank Christensen's counsel and require them to reimburse Ms. Broder her reasonable attorneys' fees and expenses incurred in defending this action.

## INTRODUCTION

Through a letter sent by in-house counsel (Defendant Rachel Broder), Toll Southeast LP Company, Inc. ("Toll") terminated its home construction contract with Plaintiff Frank Christensen ("Mr. Christensen."). He alleges he believed the termination was wrongful, and sued Toll in a separate action for breach of contract. Then, one year later, without any intervening

circumstances, Mr. Christensen sued Toll's attorney, Ms. Broder, in her personal capacity, for defamation.

But Mr. Christensen's counsel of record failed to make any investigation into the factual basis for claiming Ms. Broder defamed Mr. Christensen. Moreover, there was no nonfrivolous legal basis for suing Ms. Broder for defamation for written statements made to Mr. Christensen's attorneys on behalf of Toll.

Mr. Christensen's counsel have engaged in blatantly Rule 11 sanctionable conduct, and they have maintained such course despite the undersigned requesting multiple times that this frivolous action be dismissed.

## NATURE OF THE CASE

On March 11, 2025, Mr. Christensen filed this lawsuit in Wake County Superior Court, bringing three libel claims—libel per se, "class 2 libel" (alternative), and libel per quod (alternative)—against Ms. Broder. On May 22, 2025, Mr. Christensen had alias and pluries summons, issued May 9, 2025, left at Ms. Broder's home, though not signed by her or anyone else or delivered to any person. On June 2, 2025, Defendant's counsel sent a letter to Plaintiff's counsel (attached as Exhibit A) stating that Plaintiff's claims had no factual basis (as counsel should have already discovered during a reasonable investigation) and that there was no good-faith legal basis for Ms. Broder to be

personally liable for the challenged statements. Plaintiff's counsel did not respond.

On June 19, 2025, Ms. Broder removed this action from Wake County Superior Court to this Court.

As required by Rule 11(c), the undersigned served a draft Rule 11 motion on Plaintiff's counsel alongside further correspondence, requesting they cure their sanctionable conduct within 21 days. (Exhibit B). Plaintiff's counsel responded to that letter, without identifying any factual support for his claim and without addressing the case's legal inadequacies or the demand to cure the sanctionable conduct. (Exhibit C). Ms. Broder then filed this Motion and supporting memorandum.

## STATEMENT OF FACTS

Mr. Christensen contracted with Toll to design and construct a home for him. As part of the design process, Mr. Christensen came to Toll's design center and interacted with Toll employees. During these interactions, Mr. Christensen's statements and behavior ranged from rude to creepy to downright lewd. (Exhibit A, p. 3).

If this case proceeds, the undersigned expects that the following would be shown:

- Mr. Christensen told a female Toll employee that he was not too old to bend her over his knee and spank her.

- Mr. Christensen requested to sit in the lap of the same employee.
- Mr. Christensen told a second female Toll employee that he was looking for a girlfriend and that he loved them.

Thereafter, Toll, through Ms. Broder in her role as Toll's counsel, terminated Toll's contract with Mr. Christensen via a March 14, 2025 letter (the "Termination Letter") explaining that the contract was being terminated because of Mr. Christensen's default under the contract and because Mr. Christensen had "acted in a disruptive and unprofessional manner with Toll staff," "been abusive to Toll employees," and "used obscene language in conversations with Toll employee." (ECF No. 1-1, p. 12). In the Termination Letter, Toll also demanded payment from Mr. Christensen.

In response to the Termination Letter and less than one month after it was sent, Mr. Christensen filed suit against Toll alleging breach of contract. (ECF No. 10-1). He claimed the Termination Letter was the initiating event for that suit. (*Id.* ¶¶ 25-26).

One year after receiving the Termination Letter, Mr. Christensen sued Ms. Broder in her personal capacity, claiming he had been defamed in the Termination Letter.

## ARGUMENT

### I. Legal Standard.

Rule 11 allows sanctions for both unsupportable factual allegations and frivolous legal arguments. *See Lokhova v. Halper*, 30 F.4th 349, 354 (4th Cir. 2022) ("In essence, Rule 11 imposes a duty on attorneys to certify, on the basis of a reasonable inquiry, that any pleading or paper they file with a district court (1) is not filed 'for any improper purpose'; (2) is 'warranted by existing law'; and (3) alleges facts that 'have evidentiary support.'" (quoting Fed. R. Civ. P. 11)). Rule 11 allows also sanctions of both counsel and their clients. *See* Fed. R. Civ. P. 11(c)(1) ("If . . . the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 595 n.13 (2007) (explaining that *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, "h[eld] that Rule 11 applies to a represented party who signs a pleading, motion, or other papers, as well as to attorneys").

### II. Mr. Christensen's Claims are Legally Frivolous. Absolute Privilege Clearly Bars His Entire Suit.

A legal argument violates Rule 11 (b)(2) when it has "absolutely no chance of success under the existing precedent." *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002) (quotation omitted). That is, a legal

argument that, when viewed under "a standard of objective reasonableness," "'a reasonable attorney in like circumstances could [not have] believe[d] . . . to be . . . legally justified." *In re Sargent*, 136 F.3d 349, 352 (4th Cir. 1998) (alterations and second omission in original) (quoting *Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir. 1987)).

Here, all of Mr. Christensen's claims for defamation had no chance under existing precedent.

First, North Carolina law on absolute privilege—particularly related to statements made in the due course of judicial proceedings—gives zero chance to Mr. Christensen's defamation claims. Ms. Broder will not reiterate the relevant law in whole (given its recitation in her Memorandum in Support of Motion to Dismiss, ECF No. 10, pp. 10-14), but rather focuses, herein, on why Mr. Christensen's claims are frivolous.

As previously explained, the Termination Letter stated Toll's legal and factual reasons for its position, making it absolutely privileged under North Carolina law. (*See* ECF No. 10, p. 12). Indeed, it has been the law in North Carolina **since 1987** that attorney demand letters relevant to a proposed judicial proceeding—like the Termination Letter—are absolutely privileged from defamation claims. *Harris v. NCNB Nat. Bank of N.C.*, 85 N.C. App. 669, 673-74, 355 S.E.2d 838, 842 (1987).

To argue against the clear applicability of absolute privilege, Mr. Christensen relies on the frivolous contention that the Termination Letter was not a demand letter, as would fit it squarely in existing precedent, but a "request[]" for "payment under the promissory note." (ECF No. 14, p. 5 "[T]he letter . . . *requests* (not demands) payment . . . .")). One only need rely on Mr. Christensen's own **verified** pleadings (drafted by the same counsel as representing Mr. Christensen here) to conclude this is frivolous.[1] He alleges in these proceedings that Toll, by the March 14, 2024 Termination Letter, "demanded payment" or "demand[ed] payment under the Note." (ECF No. 1-1, ¶¶ 25-26, 34). This is unsurprising since, in the parallel breach-of-contract proceedings, he also alleged that Toll, by the letter, "demanded payment." (ECF No. 10-1, ¶¶ 25-26, 53).

This self-contradiction in attempt to save his claim makes self-evident the frivolous nature of that same claim. And the law recognizes the import of contradicting one's own pleadings: "a party is bound by the admissions of his

---

[1] Under both Federal and North Carolina law, factual assertions made in pleadings are "conclusively binding" on the party that made them. *Yates v. Ford Motor Co.*, No. 5:12-CV-752-FL, 2015 WL 3932687, at *3 (E.D.N.C. June 26, 2015) ("**Factual assertions in pleadings** and pretrial orders, unless amended, are considered judicial admissions **conclusively binding on the party who made them**." (emphasis added, quotations omitted)). Mr. Christensen's counsel cannot, through argument, rewrite Mr. Christensen's complaint.

pleadings," *Lucas v. Burnley*, 879 F.2d 1240, 1242 (4th Cir. 1989), and that "representation . . . is 'conclusive in the case,'" *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 347 (4th Cir. 2014) (quoting *Meyer v. Berkshire Life Ins. Co.*, 372 F.3d 261, 264 (4th Cir. 2004)).

Moreover, to support his argument, Mr. Christensen creates a new test, unsupported by North Carolina case law. He claims that absolute privilege requires that a statement be both (1) relevant to a proposed judicial proceeding and (2) so related to the subject matter of the controversy that it may become the subject of inquiry in the course of the proceeding. (ECF No. 14, p.4).

He is wrong. North Carolina cases required just a single inquiry—is the allegedly defamatory statement "relevant" to a judicial proceeding? A statement is relevant when it "may become the subject of inquiry in the course of the trial" as is the case unless the statement is "so palpably irrelevant to the subject matter of the controversy that no reasonable man can doubt its irrelevancy or impropriety." *Scott v. Statesville Plywood & Veneer Co.*, 240 N.C. 73, 76, 81 S.E.2d 146, 149 (1954); *e.g.*, *Jones v. Coward*, 193 N.C. App. 231, 235, 666 S.E.2d 877, 880 (2008) (citing *Scott*, 240 N.C. at 76, 81 S.E.2d at 149); *Harman v. Belk*, 165 N.C. App. 819, 826, 600 S.E.2d 43, 48 (2004) (citing same); *Burton v. NCNB Nat. Bank of N.C.*, 85 N.C. App. 702, 705-06, 355 S.E.2d 800, 802-03 (1987) (citing same); *accord Kloepfer v. Cherokee Cnty.*

*Sheriff's Dep't*, No. 1:23-CV-158-MOC-WCM, 2023 WL 8421067, at *8 (W.D.N.C. Dec. 4, 2023) (citing same). *See generally Jones*, 193 N.C. App. at 234, 666 S.E.2d at 879 (highlighting the general legal principle "[a]n attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding . . . if it has **some relation** to the proceeding" (emphasis added) (quotation omitted)).

In sum, no reasonable attorney would have believed that, under controlling law, a defamation claim based on in-house counsel's explanation of why a contract was being terminated and the amount due under a related promissory note sent to opposing counsel would be meritorious. To argue why such a claim has merit, counsel contradicts Mr. Christensen's own verified pleadings and invents from whole cloth a novel, unsupported legal test. Mr. Christensen's claims have no chance of success and, thus, are frivolous.

## III. The Complaint was Brought to Harass Ms. Broder.

The only purpose of filing a complaint against Ms. Broder in her personal capacity was to harass and attempt to intimidate her.

As a rule, the "central purpose" of a lawsuit must be "to vindicate rights." *In re Kunstler*, 914 F.2d 505, 518 (4th Cir. 1990)). A complaint violates Rule 11(b)(1) if it is not filed for this purpose and is instead filed "as leverage in

separate proceedings, to obtain discovery for use in other proceedings, and to embarrass, intimidate, or harass." *Oudeh v. Goshen Med. Ctr., Inc.*, 745 F. Supp. 3d 265, 271 (E.D.N.C. 2024) (citing *Kunstler*, 914 F.2d at 519). These improper purposes may be gleaned from "[c]ircumstantial facts surrounding the filing" including the "timing" of the filing," "[r]epeated filings, the outrageous nature of the claims made, or a signer's experience in a particular area of law, under which baseless claims have been made." *Kunstler*, 914 F.2d at 519.

Three circumstances of the filing of the Complaint demonstrate its improper purpose: (1) that it was filed a year after a suit already premised on the Termination Letter; (2) that the Complaint was a rehash of the Contract Complaint; and (3) that it targeted Ms. Broder in her individual capacity for an attorney demand letter sent to another attorney.

The timing and form of Complaint here shows that it was not a good faith attempt to vindicate Mr. Christensen's rights. Mr. Christensen and his counsel filed the Contract Complaint less than month after receipt of the Termination Letter and cited that Letter as the triggering event for suit. (*Compare* ECF No. 1-1, p. 10, *with* ECF No. 10-1 ¶ 25). Yet, it was not until almost **one year** after receipt of the Termination Letter that Mr. Christesen filed this suit

against Ms. Broder, also premised on the Termination Letter. (*Compare* ECF No. 1-1, p. 10, *with* Compl. ¶ 28).

No new relevant facts arose between the date of the Termination Letter and the filing of this suit. Mr. Christensen's counsel engaged in no investigation or discovery during that time; the duplicate factual underpinning of each suit is clear by the near mirror complaints. (*Compare* ECF No. 1-1 *with* ECF No. 10-1).

If the Termination Letter was defamatory and as damaging as Mr. Christensen and his counsel now claim, why did it take almost a year to file? Litigation about the letter was obviously already on the table, given the short timetable between the Termination Letter date and the Contract Action filing.

This is confirmed by the fact that Mr. Christensen seeks to recover from Ms. Broder personally for something she did plainly as Toll's attorney. The Termination Letter undisputedly was sent by Ms. Broder in her role as in-house legal counsel for Toll. And North Carolina law allows employer-business entities to be held vicariously liable for allegedly defamatory statements made by employee-agents.[2] *See Gillis v. Great Atl. & Pac. Tea Co.*, 223 N.C. 470, 473, 27 S.E.2d 283, 285 (1943); *Cotton v. Fisheries Prods. Co.*, 177 N.C. 56, 97 S.E.

[2] Any such defamation against Toll arising from the Termination Letter would be similarly meritless as the one here.

712, 713-14 (1919); *see, e.g.*, *Johnson v. Town of Smithfield*, No. 5:23-CV-349-D, 2024 WL 1336466, at *30 (E.D.N.C. Mar. 28, 2024). Yet, Mr. Christensen and his counsel targeted Ms. Broder personally, despite having ongoing litigation with Toll.

Moreover, demand letters like the Termination Letter, from one attorney to another, are ubiquitous; but courts are not overrun with defamation trials. This letter uses vague descriptors of Mr. Christensen's conduct, which are understated given Mr. Christensen's actual underlying conduct. The choice to file this defamation suit based on such a tame, commonplace letter directed only to Mr. Christensen's attorneys highlights the true purpose of this lawsuit—to harass Ms. Broder. Indeed, the letter goes out of its way to be tame—refraining from including the details of Mr. Christensen's improper and unacceptable behavior.

This tactical decision to sue Ms. Broder could not have been because of any perceived increased likelihood of success. Instead, it appears plain that Mr. Christensen sought to intimidate Ms. Broder for her part in what he saw as a reputationally damaging act. But that is not vindication of rights, that is harassment and not permitted by Rule 11(b)(1).

## IV. Plaintiff's Counsel Failed to Perform an Investigation of Mr. Christensen's Claims Prior to Signing and Filing the Complaint.

"In determining whether a complaint is well grounded in fact, courts use '[a]n objective test . . . to determine the reasonableness of a lawyer's prefiling investigation.'" *Oudeh*, 745 F. Supp. 3d at 270 (quoting *Kunstler*, 914 F.2d at 514). "An attorney fails to satisfy [the requirement that factual contentions have evidentiary support] when the attorney has not obtained any supporting information concerning the factual allegation before filing a complaint." *Id.*; *see also Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991) ("To be reasonable, the prefiling factual investigation must uncover some information to support the allegations in the complaint. A complaint containing allegations unsupported by any information obtained prior to filing violates the required prefiling factual investigation.").

For example, where "[m]any of the factual inaccuracies" of a pleading "could have been discovered by the most cursory investigation," an experienced attorney's failure to investigate is "inexcusable" and cannot be explained away by '[t]he need for discovery to complete the factual basis for alleged claims." *Kunstler*, 914 F.2d at 516.

Here, Mr. Christensen's counsel failed to perform even a cursory investigation of Mr. Christensen's claims. Prior to filing, Plaintiff's counsel never reached out to Toll to investigate Mr. Christensen's claims of defamation.

A reasonable attorney would have sought independent verification that Christensen had not "acted in a disruptive and unprofessional manner," "been abusive to Toll employees," and "used obscene language." *See Kunstler*, 914 F.2d at 514 ("Blind reliance on the client is seldom a sufficient inquiry." (quotation omitted)); *see also Harris v. Marsh*, 679 F. Supp. 1204, 1386 (E.D.N.C. 1987)[3] ("When an attorney must rely on his client, he should question him thoroughly, not accepting the client's version on faith alone."), *aff'd in relevant part sub nom. Blue v. U.S. Dep't of Army*, 914 F.2d 525 (4th Cir. 1990). This could be accomplished, inter alia, by requests to Toll for the factual basis of Ms. Broder's statements or a pre-filing request to interview relevant Toll employees.

Toll received neither before the Complaint was filed. This is particularly damning given that Plaintiff and his counsel had already initiated the parallel contract action in which they could have **mandated** Toll or its employees answer their questions via discovery, given the claim that Toll's termination of the contract was wrongful. But no discovery was served in that case.

---

[3] Judge Fox later vacated certain sanctions on Harris's on motion for reconsideration, but this later order does not impact his earlier reasoning. *See Harris v. Marsh*, 123 F.R.D. 204 (E.D.N.C. 1988).

Plaintiff's counsel's letter demonstrates the paucity of their pre-filing investigation. Counsel claimed that they needed the "name(s) of . . . Toll employee(s)" who interacted with Mr. Christensen, and the "dates, times, and locations" in order "[t]o evaluate the merits of *[the undersigned's] allegations*." (Exhibit C, p. 1 (emphasis added)). But Plaintiff's counsel needed to investigate these facts prior to filing so **they** could evaluate Mr. Christensen's allegations. *See Harris*, 679 F. Supp. at 1386 ("[I]f all the attorney has is his client's word that facts do or do not exist, when a reasonable inquiry would reveal otherwise, he has not satisfied the obligation of Rule 11.").

Figuring out whether your client was telling you the truth after filing suit does not cut it for the purposes of Rule 11.

## V. The Appropriate Sanction is Attorneys' Fees.

"Rule 11 does not specify the sanction to be imposed for any particular violation of its provisions . . . ." *Oudeh*, 745 F. Supp. 3d 265 at 274. However, the Rule provides that "attorneys' fees" may be warranted, including those incurred in filing the Rule 11 motion. Fed. R. Civ. P. 11(c)(2), (4).

Because Ms. Broder is confident that her pending Motion to Dismiss is meritorious, she requests that the Court impose the sanction of Mr. Christensen's counsel paying the attorneys' fees Ms. Broder has incurred in

defending against these frivolous, harassing claims and in having to file the instant motion.

**CONCLUSION**

Defendant Rachel Hannah Broder respectfully requests that the Court grant her Motion for Sanctions and enter an order sanctioning Plaintiff's counsel and requiring them to reimburse Defendant her reasonable attorneys' fees and expenses incurred in defending this action and filing the related Motion.

This the 7th day of August, 2025.

*/s/Brett A. Berman*

**FOX ROTHSCHILD LLP**

Joseph R. Shuford
N.C. Bar No. 50991
jshuford@foxrothschild.com
Sean T. Placey
N.C. Bar No. 56683
splacey@foxrothschild.com

230 N. Elm Street, Suite 1200
PO Box 21927 (27420)
Greensboro, NC 27401
Telephone: 336.378.5200
Facsimile: 336.378.5400

Brett A. Berman
P.A. Bar No. 204843
bberman@foxrothschild.com
2001 Market Street
Suite 1700
Philadelphia, PA 19103
*Specially Appearing per Local Civil Rule 83.1(e)*

*Counsel for Defendant*

## CERTIFICATE OF WORD COUNT

The undersigned hereby certifies that this document complies with Local Rule 7.2(f)(3) in that it contains fewer than 8,400 words as reported by word processing software.

This the 7th day of August, 2025.

*/s/Brett A. Berman*
Brett A. Berman

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Reply Brief in Support of the Motion to Dismiss with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties.

This the 7th day of August, 2025.

*s/ Brett A. Berman*
Brett A. Berman