IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:25-CV-345-FL

| | | |
|---|---|---|
| FRANK CHRISTENSEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| RACHEL HANNAH BRODER, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6) (DE 9), and motion for sanctions pursuant to Rule 11(c) (DE 17). The motions have been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, the motions are denied.

**STATEMENT OF THE CASE**

Plaintiff commenced this libel action in Wake County Superior Court, March 10, 2025, seeking damages on the basis of three claims: 1) "Libel Per Se," 2) "Class 2 Libel," and 3) "Libel Per Quod." (Compl. (DE 1-1) at 6-8). Defendant filed a notice of removal on the basis of diversity jurisdiction, followed by the instant motion to dismiss for failure to state a claim and for lack of personal jurisdiction. In support of her motion to dismiss, defendant relies upon a prior state court complaint filed by plaintiff captioned <u>Christensen v. Toll Southeast LP Company, Inc.</u>, No. 24CV011422-910 (Wake Cty.) (the "state court action").

After conclusion of briefing on defendant's motion to dismiss, defendant filed the instant motion for sanctions, relying upon correspondence between counsel for the parties. Plaintiff

responded in opposition, relying upon additional correspondence, and defendant replied. The court has stayed scheduling conference activities pending decision on defendant's motion to dismiss.

## STATEMENT OF FACTS

The facts alleged in the complaint may be summarized as follows. Plaintiff is an individual citizen and resident of Chapel Hill, North Carolina. Defendant is a resident of Pennsylvania and an attorney who works as assistant vice president and counsel for Toll Southeast LP Company, Inc. ("Toll"), which promotes itself as "America's Luxury Home Builder." (Compl. Ex. A (DE 1-1 at 12)).

On October 4, 2023, plaintiff and Toll "entered into an Agreement of Sale (the 'Contract') for Toll to construct, and Plaintiff to purchase, a home on a home on Lot 79 of the Regency at Olde Towne subdivision having an address of 2073 Abbeyhill Drive, Raleigh, NC 27610 (the 'Home')." (Compl. (DE 1-1) ¶ 6).[1] As part of the Contract, plaintiff requested a "wheelchair accessible, 'zero threshold' shower" in the primary bedroom. (Id. ¶ 9).

"At Plaintiff's first Design Appointment on November 2, 2023, Plaintiff discovered, for the first time that the shower in the primary bathroom was not wheelchair accessible." (Id. ¶ 17). "Plaintiff continued to work with Toll's representatives towards completing design selections while simultaneously seeking a resolution to the shower issue." (Id. ¶ 18). "Despite Plaintiff's attempts to finalize the design selections, Toll prevented Plaintiff from completing the design selections by failing to provide requested information and/or making unreasonable scheduling requests." (Id. ¶ 20).

"On January 17, 2024, Plaintiff met with the contractor for construction of the Home and discovered that the orientation of the home had been reversed without Plaintiff's knowledge." (Id.

---

[1] When quoting allegations in the complaint, the court retains capitalization as used in the complaint.

¶ 22). "To date, Plaintiff has paid deposits to Toll totaling $57,791.00." (Id. ¶ 23). "At the time Plaintiff executed the Contract, he also executed a Promissory Note . . . in the amount of $31,150.00 payable to Toll in the event of default by Plaintiff." (Id. ¶ 24).

"On March 14, 2024, Toll terminated the Contract and demanded payment under the [Promissory Note] via letter," a copy of which is attached to the complaint. (Id. ¶ 25; see id. Ex. A (DE 1-1 at 12)) (the "Termination Letter"). According to the complaint, "Toll purposely prevented Plaintiff's performance under the Contract in order to terminate the Contract, retain Plaintiff's deposits, and demand payment under the Note, all with the intention of selling the Home for a higher price (without . . . discounts promised to Plaintiff)." (Compl. (DE 1-1) ¶ 26).

The Termination Letter, which was authored and signed by defendant, reads in pertinent part:

> Moreover, it has come to my attention that during your home purchase process, you have acted in a disruptive and unprofessional manner with Toll staff, both at the Sales Center and the Design Studio. You have been abusive to Toll employees and used obscene language in conversation with Toll employees, including women, on several occasions. That behavior is un acceptable to Toll and we will not subject our employees to it.

(Id. ¶ 28 (emphasis in complaint, with the foregoing quotation designated in the complaint as the "Defamatory Statements"); see id. Ex. A (DE 1-1 at 1).

According to plaintiff, the "Defamatory Statements authored by Defendant in the Termination Letter are false." (Compl. (DE 1-1) ¶ 29). For instance, the statements that "accuse Plaintiff of being abusive and using obscene language towards Toll staff, particularly towards women, thereby characterizing the Plaintiff, to a reasonable and ordinary person as abusive or obscene with a sexual connotation," are false. (Id. ¶ 31) (emphasis in original). Further, plaintiff alleges that the Defamatory Statements caused plaintiff to suffer "ridicule, humiliation, public

3

contempt, loss of reputation," and other injuries, including loss of "the Home and deposits to Toll." (Id. ¶¶ 33-34).

Plaintiff alleges the Defamatory Statements "were communicated to Plaintiff's attorneys and paralegals," "employees, agents, and representatives of Toll," "attorneys, paralegals, and legal staff of Toll," and "[u]pon information and belief . . . to more individuals." (Id. ¶¶ 38-41).

**COURT'S DISCUSSION**

A. Motion to Dismiss

   1. Standard of Review

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of a claim for lack of personal jurisdiction. "When a district court considers a question of personal jurisdiction based on the contents of a complaint and supporting affidavits the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014).[2] At this stage, the court "must construe all relevant pleading allegations in the light most favorable to plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989); see Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993) ("[T]he district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor.").

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level."

---
[2] Throughout this order, internal citations and quotation marks are omitted from all case citations unless otherwise specified.

Twombly, 550 U.S. at 555.  In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

    2.    Analysis

        a.    Personal Jurisdiction

"A lawful assertion of personal jurisdiction over a defendant requires satisfying the standards of the forum state's long-arm statute and respecting the safeguards enshrined in the Fourteenth Amendment's Due Process Clause." Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 301 (4th Cir. 2012).  "North Carolina's long-arm statute is construed to extend jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause, . . . the dual jurisdictional requirements collapse into a single inquiry" into whether personal jurisdiction comports with due process. Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001).

The due process inquiry "can be undertaken through two different approaches – by finding specific jurisdiction based on conduct connected to the suit or by finding general jurisdiction" based on "continuous and systematic" activities. ALS Scan, Inc. v. Digital Serv. Consul., Inc., 293 F.3d 707, 711 (4th Cir. 2002).  Here, plaintiff does not assert general jurisdiction, and the court focuses on whether plaintiff has made a prima facie showing of specific jurisdiction.

"To decide whether specific jurisdiction exists, [the court must] examine (1) the extent to which the defendant purposefully availed [her]self of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3)

5

whether the exercise of personal jurisdiction would be constitutionally reasonable." Mitrano v. Hawes, 377 F.3d 402, 407 (4th Cir. 2004); see Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-76 (1985).

As for the first prong, "[t]he purposeful availment inquiry . . . is flexible, and depends on a number of factors that courts consider on a case-by-case basis." Universal Leather, LLC, 773 F.3d at 559–60. In the business context, those factors include, but are not limited to, an evaluation of:

> (1) whether the defendant maintains offices or agents in the forum state; (2) whether the defendant owns property in the forum state; (3) whether the defendant reached into the forum state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the forum state; (5) whether the parties contractually agreed that the law of the forum state would govern disputes; (6) whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; (7) the nature, quality and extent of the parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum.

Id. at 560.

As for the second prong, "[t]he inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." Walden v. Fiore, 571 U.S. 277, 283-84 (2014). "Thus where the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there." Burger King, 471 U.S. at 475–76. "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." Walden, 571 U.S. at 284.

"The third prong—that the exercise of personal jurisdiction be constitutionally reasonable—permits a court to consider additional factors to ensure the appropriateness of the

forum once it has determined that a defendant has purposefully availed [him]self of the privilege of doing business there." Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 279 (4th Cir. 2009). "Such factors include: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." Id.

Here, plaintiff alleges sufficient facts to make "a prima facie showing in support of" specific personal jurisdiction over defendant. Universal Leather, LLC, 773 F.3d at 558. Plaintiff alleges that defendant "authored and signed" the Termination Letter. (Compl. ¶ 27). The Termination Letter was addressed to plaintiff "c/o" his attorney, in Raleigh, North Carolina, thus directed to both plaintiff and his attorney in North Carolina. (Compl. Ex. A (DE 1-1 at 12)). In addition, the Termination Letter concerns the Contract and Promissory Note regarding construction of the Home in Raleigh, North Carolina. (Id.). Further, the Defamatory Statements address plaintiff's conduct in North Carolina. (Id.). As such, "defendant purposefully availed [her]self of the privilege of conducting activities in the State," Mitrano, 377 F.3d at 407, and "manifestly has availed himself of the privilege of conducting business there." Burger King, 471 U.S. at 475–76. Indeed, "defendant's suit-related conduct . . . create[s] a substantial connection with the forum State." Walden, 571 U.S. at 284.

Defendant cites to Cadle Co. v. Schlichtmann, 123 F. App'x 675, 681 (6th Cir. 2005), for the proposition that "a single letter by an attorney, concerning potential litigation cannot confer specific jurisdiction over the attorney in the addressee's state when the letter merely relates to the cause of action." (Def's Mem. (DE 10) at 25). This case, and defendant's argument relying upon it, however, are inapposite for two critical reasons. First, the Termination Letter is not a letter

7

"concerning potential litigation." Cadle Co., 123 Fed. App'x at 681. Rather, on its own terms, it is a letter about termination of the Contract for construction of the Home, in North Carolina, based upon plaintiff's alleged "behavior" pertaining to that construction. (Compl. Ex. A (DE 1-1 at 12). Second, it does not "merely relate[] to [a] cause of action." Cadle Co., 123 Fed. App'x at 681. Indeed, it does not mention any cause of action or litigation. (Compl. Ex. A (DE 1-1 at 12). Cadle Co., thus is unhelpful to the personal jurisdiction analysis in the instant case.

Accordingly, that part of defendant's motion based upon lack of personal jurisdiction is denied.

      b.      Absolute Privilege

Defendant argues that plaintiff's libel claims must be dismissed based upon absolute privilege because the Termination Letter was sent in due course of a judicial proceeding. For the following reasons, this argument is without merit.

"[T]he common law has recognized privileges that protect the publication of defamatory speech." Bouvier v. Porter, 386 N.C. 1, 10 (2024). "One such privilege is the absolute privilege, which applies when the public has an interest in the defendant speaking his mind fully and freely." Id. "When the absolute privilege applies, all actions in respect to the words used are absolutely forbidden—even if the plaintiff alleges that the defendant published them falsely, knowingly, and with express malice." Id. "This powerful protection is only granted in certain scenarios, such as debates in the General Assembly, communications between military or law enforcement officers and their superiors in the line of duty, and everything said by a judge on the bench, by a witness in the box, and the like." Id. (emphasis in original).

"Relevant to this case, a defamatory statement is absolutely privileged if it is made in the due course of a judicial or quasi-judicial proceeding and is relevant and pertinent to the subject

8

matter of the proceeding." Id. "Broadly stated, statements are made in the due course of a proceeding if they are made in the regular progression of an action or proceeding or are communications relevant to a proposed judicial proceeding." Id. "Importantly, this requirement encompasses statements that predate the formal commencement of an action or proceeding." Id. "Whether [an] occasion is privileged is a question of law for the court, subject to review, and not for the jury, unless the circumstances of the publication are in dispute." Stewart v. Nation-Wide Check Corp., 279 N.C. 278, 284 (1971).

Here, the Termination Letter does not meet the foregoing requirements for protection by absolute privilege, because the statements in the Termination Letter were not "made in the regular progression of an action or proceeding," and they are not "communications relevant to a proposed judicial proceeding." Bouvier, 386 N.C. at 10. As an initial matter, there is no allegation that the statements in the Termination Letter were "made in the regular progression of an action or proceeding." Id. Likewise, there is no "proposed judicial proceeding" for which the statements have relevance, because there is no proposed judicial proceeding suggested or mentioned in the Termination Letter. Id.; (see Compl. Ex. A (DE 1-1 at 12)).

Defendant argues that the Termination Letter is relevant to a proposed judicial proceeding because it is "a classic demand letter," like the one held absolutely privileged in Harris v. NCNB Nat. Bank of N. Carolina, 85 N.C. App. 669, 672 (1987). Harris and the letter described therein, however, are different in several critical respects. There, the demand letter stated that it "enclosed for the [recipients] review a copy of the complaint that [the defendant] plans to file in this matter." Id. at 672 (emphasis added). It further stated, "[u]nless it receives . . . the sum [specified] . . . [the defendant] will file this complaint." Id. (emphasis added). Finally the demand letter in Harris in fact enclosed the "unfiled complaint." Id. None of these critical facts are present here. The

9

Termination Letter does not threaten to file a complaint if the sum due is not paid, it does not reference an enclosed complaint, and it does not in fact include a unfiled complaint. Thus, there is no "proposed judicial proceeding" as there was in Harris. Id. at 674.

Defendant argues that the Termination Letter qualifies for absolute privilege because "the only next step available for Toll to recover on its demand was for Toll to initiate a dispute resolution proceeding." (Def's Reply (DE 15) at 7). Likewise, she argues, plaintiff "understood that the next step after receiving the Termination [Letter] was that one party would file suit," because plaintiff initiated the state court action the next month. (Id. at 8). These arguments are unavailing on multiple levels. First, they rely upon facts not in the complaint. There is no allegation in the complaint as to what steps were available for Toll to recover on its demand, nor what plaintiff understood the next steps would be. (See Compl. (DE 1-1) at 2-12). Second, the demand letter does not itself propose that a "dispute resolution proceeding" is the only step remaining, much less that plaintiff should initiate a lawsuit. (See Compl. Ex. A (DE 1-1) at 12). Third, there is no authority under North Carolina law for the proposition that the test for a "proposed judicial proceeding" is met based upon what was "the only next step available for [the demanding party] to recover on its demand," or the recipient's understanding of his options. (Def's Reply (DE 15) at 7-8). Notably, this is not what took place in Harris, nor what is referenced as a qualifying event in Bouvier. See Harris, 85 N.C. App. at 672; Bouvier, 386 N.C. at 10.

Defendant also argues that "terminating the contract, by itself, poses a risk of litigation." (Def's Reply (DE 15) at 7). This argument likewise misses the mark. Nothing in Bouvier and Harris suggests that the test for a "proposed judicial proceeding" can be met by the mere "risk of litigation." Harris, 85 N.C. App. at 672; Bouvier, 386 N.C. at 10. Indeed, it is conceivable that any allegedly defamatory letter, or any letter terminating a contract, could pose a risk of litigation.

10

But this is not the test for absolute privilege set forth under North Carolina law. See Bouvier, 386 N.C. at 10; Harris, 85 N.C. App. at 672.

Two additional North Carolina Court of Appeals cases, and cases outside of North Carolina, cited by defendant, likewise are not helpful because they do not alter the standard set forth in Bouvier and Harris. See, e.g., Smith v. Carolina Coach Co., 120 N.C. App. 106, 114–15 (1995) (providing no discussion of what was stated in attorney demand letters and holding appellant had abandoned assignment of error as to libel claim); Burton v. NCNB Nat. Bank of N. Carolina, 85 N.C. App. 702, 706 (1987) (stating that at the time of the allegedly defamatory communication, the sender and recipient "were parties in an action brought by [the defendant] to recover a debt from plaintiff as its guarantor") (emphasis added); Messina v. Krakower, 439 F.3d 755, 760 (D.C. Cir. 2006) (noting "the privilege applies to written correspondence between parties counsel concerning threatened lawsuits" and "statements relating to threats of litigation") (emphasis added); Krouse v. Bower, 20 P.3d 895, 899 (Utah 2001) (requiring a "proposed judicial proceeding," and holding test met based on statement "if their concerns were not resolved, they would have no choice but to file suit") (emphasis added). Moreover, the circumstances present in those cases involving ongoing litigation or express threats of litigation are not present here.

In sum, where the requirements for absolute privilege are not met, that part of defendant's motion premised upon absolute privilege is denied.

    c.    Third-Party Publication

Defendant argues that plaintiff's claims must be dismissed because plaintiff has not alleged publication of the Termination Letter to a third party.

To recover for libel, a plaintiff must allege the "defendant (1) caused injury to the plaintiff (2) by making false, defamatory statements (3) of or concerning the plaintiff (4) that were

11

published to a third person." Bouvier, 386 N.C. at 10. With respect to the third person requirement, "it is not necessary that the defamatory words be communicated to the public generally, or even to a considerable number." Hedgpeth v. Coleman, 111 S.E. 517, 519 (1922).[3] "It is sufficient if they be communicated only to a single person other than the person defamed." Id. "[I]t has been held that . . . publication was sufficient where the defendant had communicated the defamatory matter to the plaintiff's agent, or attorney; or had read it to a friend before posting it to the plaintiff." Id.

Here, the allegations in the complaint are sufficient to give rise to a plausible inference of publication to a third party, where plaintiff alleges the Defamatory Statements "were communicated to Plaintiff's attorneys and paralegals," "employees, agents, and representatives of Toll," "attorneys, paralegals, and legal staff of Toll," and "[u]pon information and belief . . . to more individuals." (Id. ¶¶ 38-41). Communication to plaintiff's attorneys and paralegals meets the standard stated in Hedgpeth. 111 S.E. at 519. Likewise, plaintiff's allegations about communication to "employees," "legal staff," and "paralegals," of Toll, as well as "more individuals," give rise to additional inferences of publication sufficient to meet the pleading standard. (Compl. ¶¶ 39-41).

Defendant's arguments to the contrary are unavailing. Defendant argues that North Carolina Supreme Court law stating that communication to an attorney of the plaintiff is sufficient constitutes "dicta" that this court should not follow, particularly in light of the passage of time. (Def's Mem. (DE 10) at 17 n. 6). Defendant does not identify in her brief, however, any subsequent North Carolina Supreme Court authority overruling Hedgepeth or questioning the law set forth in Hedgepeth. Defendant also argues that it should not be inferred from the Termination

---

[3] The court cites to the Southeastern Reporter, where a pin cite is not available to the North Carolina Reporter.

Letter that it was communicated to "paralegals" as plaintiff alleges. (Id. n. 7). But, at this juncture, the court must accept plaintiff's allegation that it was communicated to paralegals. (Compl. ¶ 38).

Defendant cites to Satterfield v. McLellan Stores Co., 2 S.E.2d 709 (1939), as an example of communication between corporate employees not constituting publication to a third party. There, the court held that "the acts of the manager in designating and indicating what should be inserted in [an allegedly defamatory notice] and the act of the stenographer in filling in the answer to the question, were both parts of one act," and thus not publication. Id. at 711. Here, however, plaintiff has not allege communications between defendant and other employees were akin to the act of a stenographer. Instead he alleges the Defamatory Statements "were communicated to "employees, agents, and representatives" as well as "attorneys, paralegals, and legal staff" of Toll. (Compl. ¶¶ 39-40). Construing the facts most favorably to plaintiff, as the court must at this juncture, this gives rise to a plausible inference of publication. Hedgpeth, 111 S.E. at 519.

Similarly unavailing are defendant's arguments that plaintiff "invited [the] communication to his attorneys," and the Termination Letter is protected by qualified privilege because it is "limited in scope to its purpose." (Def's Mem. (DE 10) at 15, 20). These arguments assume facts outside of the pleadings. Plaintiff does not allege in the complaint, for example, that he invited Toll to send the Termination Letter, much less a letter containing the Defamatory Statements, to his attorney. Further, it is not plausible to infer from the text of the Termination Letter alone that it was limited in scope to a sole purpose, where there are several components to the letter, including terminating the Contract, demanding payment under the Note, and asserting the Defamatory Statements. (Compl. Ex. A (DE 1-1 at 12)). As an "affirmative defense," defendant's assertion of qualified privilege must be resolved on a more complete record, whereupon the "burden is on defendant to establish facts sufficient to support this plea." Stewart, 279 N.C. at 283.

Thus, defendant has not demonstrated that dismissal is warranted on the basis of the publication element of plaintiff's claims. In this part, defendant's motion to dismiss is denied.

    d.  Defamatory Statements

Defendant argues that plaintiff's claims must be dismissed because the alleged Defamatory Statements are not objectively provable facts and are, thus, not actionable.

"There are three classes of libel. They are: (1) publications obviously defamatory which are called libel Per se; (2) publications susceptible of two interpretations one of which is defamatory and the other not; and (3) publications not obviously defamatory but when considered with innuendo, colloquium, and explanatory circumstances become libelous, which are termed libels Per quod." Arnold v. Sharpe, 296 N.C. 533, 537 (1979).

"For a publication to be libelous per se, the defamatory words must be susceptible of but one meaning and of such nature that the court can presume as a matter of law that they tend to disgrace and degrade the party or hold him up to public hatred, contempt or ridicule, or cause him to be shunned and avoided." Cannon v. Peck, 36 F.4th 547, 560 (4th Cir. 2022). By contrast, "if the injurious character of the spoken statement appears, not on its face as a matter of general acceptance, but only in consequence of extrinsic, explanatory facts showing its injurious effect, such utterance is said to be actionable only per quod." Badame v. Lampke, 242 N.C. 755, 757 (1955). "Generally, a communication is deemed defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Cannon, 36 F.4th at 559.

"[T]he issue of falsity . . . focuses on substantial truth," and it "relates to the defamatory facts implied by a statement." Robinson v. Williams, 59 F.4th 113, 118-119 (4th Cir. 2023). "Thus, a plaintiff must establish that 'the sting,' the aspect causing injury to the plaintiff's reputation, is

materially false." Id. at 118. "In making this assessment, we consider the allegedly defamatory statement and the facts implied by that statement within their full context." Id.

"[I]n order to be actionable as defamation a statement must be one of fact, not merely opinion." Desmond v. News & Observer Publ'g Co., 375 N.C. 21, 38 (2020). Nevertheless, "the United States Supreme Court has cautioned against 'an artificial dichotomy between 'opinion' and fact' and has stated that 'expressions of 'opinion' may often imply an assertion of objective fact.'" Id. (quoting Milkovich v. Lorain J. Co., 497 U.S. 1, 19 (1990)).

Here, dismissal of all of plaintiff's claims on the basis that the Defamatory Statements are not objectively provable or mere opinions, as defendant argues, is not warranted.[4] The alleged Defamatory Statements include, at a minimum, language susceptible to an interpretation that "tends so to harm the reputation of [plaintiff] as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Cannon, 36 F.4th at 559. Drawing inferences from the complaint in the light most favorable to plaintiff, there are multiple "defamatory facts implied by" the Defamatory Statements, as well as "facts implied by [the] statement[s] within their full context," which plaintiff alleges are materially false. Robinson v. Williams, 59 F.4th at 118-119. These include, for example, the following

 1) [D]uring [plaintiff's] home purchase process, [plaintiff has] acted in a <u>disruptive</u> and <u>unprofessional</u> manner with Toll Staff, both at the Sales Center and the Design Studio.

 2) [Plaintiff has] been <u>abusive</u> to Toll employees . . . on <u>several occasions</u>.

 3) [Plaintiff has] <u>used obscene language</u> in conversation with Toll employees, <u>including women</u>, on <u>several occasions</u>.

---

[4] Because defendant does not differentiate in her argument between the classes of libel, the court does not sua sponte address the potential differences in viability of each of plaintiff's claims, but rather leaves that analysis for a more complete record.

15

(Compl. (DE 1-1) ¶ 28) (emphasis in original). Plaintiff alleges that the Defamatory Statements thus "characteriz[e] [plaintiff], to a reasonable and ordinary person, as abusive or obscene with a sexual connotation," and "being abusive and using obscene language towards women on several occasions." (Id. ¶¶ 31-32).

In the context of facts set out in the Termination Letter, the Defamatory Statements reasonably may be interpreted to describe multiple incidents, or to imply a description of multiple incidents, in which plaintiff came into the Sales Center and Design Studio and disrupted staff, used obscene language towards women, and was abusive with a sexual connotation, all of which plaintiff alleges was false. (Compl. ¶¶ 28-32). Drawing inferences from the facts alleged in the complaint in plaintiff's favor, such Defamatory Statements are not merely subjective opinions but rather "an articulation of . . . objectively verifiable event[s]." Milkovich, 497 U.S. at 22.

Defendant argues that the Defamatory Statements are equivalent to an example cited in Milkovich, wherein a "communicator . . . described Mayor Jones' acceptance of Lenin and Marx as abysmally ignorant, which was that particular communicator's opinion of Mayor Jones' act of acceptance and, thus, not actionable." (Def's Mem. (DE 10) at 24). This example from Milkovich, however, is unhelpful to defendant for multiple reasons. First, it involves a public figure, the First Amendment standard for which is different from a private individual. 497 U.S. at 15. Second, Milkovich analyzed a claim of "libel per se," not all three classes asserted here. Id. at 7. Third, and critically, the language described in Milkovich is not equivalent to the Defamatory Statements here, which describe specific, concrete, acts by the plaintiff towards specific individuals, which are unlike the suggestions cited in Milkovich.

Defendant also argues that the Defamatory Statements are equivalent to "the descriptors 'sinister' and 'Gestapo' of the plaintiff's voice" in Daniels v. Metro Mag. Holding Co., 179 N.C.

App. 533 (2006), constituting "one person's opinion of how a particular voice sounded and, also, not actionable." (Def's Mem. (DE 10) at 24). Daniels, however, is inapposite, because it involved an analysis expressly limited to libel "per se," and the plaintiff "set[] forth no claim for libel per quod," thus precluding reference to implication, context, and innuendo. 179 N.C. App. at 540. Moreover, the references in Daniels are not equivalent because the Defamatory Statements here include references to plaintiff's conduct on multiple occasions, and not only his tone of voice but also obscenity and an "abusive," "sexual connotation," as well as a "disrupt[ion]" to a professional working environment at the Sales Center and Design Studio. (Compl. (DE 1-1) ¶¶ 28-32).[5]

In sum, dismissal of all of plaintiff's claims on the basis that the Defamatory Statements are non-actionable opinions is not warranted. The court leaves for a later juncture, upon a more complete record, if any, further analysis of this issue as applied to each of plaintiff's claims individually. Defendant's motion to dismiss in this part thus is denied.

B. Motion for Sanctions

Defendant argues that she is entitled to Rule 11 sanctions because plaintiff's claims are legally frivolous, brought without sufficient pre-filing factual investigation, and brought to harass.

By filing a complaint, "an attorney . . . certifies," in pertinent part, "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass . . . (2) the claims . . . are warranted by existing law . . . ; [and] (3) the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any

---

[5] Defendant's citation to Jackson v. Mecklenburg Cnty., N.C., No. CIV. A. 3:07-CV-218, 2008 WL 2982468 (W.D.N.C. July 30, 2008), similarly is unavailing, at this juncture, where that case addressed solely a "per se" claim, and where the court dismissed part of the claim because the alleged defamatory statement was merely a "conclusive allegation," and another part as "too vague." Id. at * 7.

17

attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

"For the purposes of Rule 11, the factual inquiry necessary to file a complaint is generally satisfied if all of the information which can be obtained prior to suit supports the allegations made, even though further facts must be obtained through discovery to finally prove the claim." In re Kunstler, 914 F.2d 505, 516 (4th Cir. 1990). "However, a complaint containing allegations unsupported by any information obtained prior to filing, or allegations based on information which minimal factual inquiry would disprove, will subject the author to sanctions." Id. (emphasis in original). "Rule 11 sanctions are appropriate when a lawyer attempts to use discovery to support outrageous and frivolous claims for which there is no factual support." Id. (emphasis in original).

"[W]hether or not a pleading has a foundation in fact or is well grounded in law will often influence the determination of the signer's purpose, and . . . a district court should consider the first two prongs of Rule 11 before making a determination of improper purpose." Id. at 518 (declining to "decide whether a complaint which is well grounded in law and in fact can be sanctioned solely on the basis that it was filed for an improper purpose"). "[I]n order to determine 'improper purpose,' a district court must judge the conduct of counsel under an objective standard of reasonableness rather than assessing subjective intent." Id. "Repeated filings, the outrageous nature of the claims made, or a signer's experience in a particular area of law, under which baseless claims have been made, are all appropriate indicators of an improper purpose." Id.

Rule 11 sanctions on the grounds identified by defendant are not supported by the instant record. First, where the court has denied defendant's motion to dismiss, defendant's argument that the claims are "legally frivolous" is without merit. (Def's Mem. (DE 18) at 5). Second, plaintiff has identified sufficient evidentiary support for his claims to meet the Rule 11 standard at this

18

juncture. In particular, the Termination Letter itself, coupled with plaintiff's own sworn averments in his verified complaint (see Compl. (DE 1-1) at 11), constitute "some information to support the allegations in the complaint," sufficient to meet the Rule 11 test. Brubaker v. City of Richmond, 943 F.2d 1363, 1373 (4th Cir. 1991). Third, the legal and factual basis for the claims objectively weigh against a finding of improper purpose, considering the totality of the circumstances. See Kunstler, 914 F.2d at 518.

Defendant argues plaintiff's counsel did not perform sufficient pre-filing investigation of the facts because plaintiff's counsel "never reached out to Toll to investigate [plaintiff's] claims of defamation." (Def's Mem. (DE 18) at 13). But, this is not what the Rule 11 standard requires. The pertinent question is whether "there is no factual support," and "any information obtained prior to filing." Kunstler, 914 F.2d at 515-516 (emphasis in original); Brubaker, 943 F.2d at 1373. In the context of defamation claims, which are based upon plaintiff's own personal knowledge, this standard is met here by plaintiff's verification. In this respect, the instant case is distinguishable from those cases, relied upon by defendant, that do not involve claims in the same posture. See, e.g., Kunstler, 914 F.2d at 514 (claims based upon alleged misconduct of district attorneys and state officials); Harris v. Marsh, 679 F. Supp. 1204, 1227 (E.D.N.C. 1987) (Rule 11 sanctions imposed following trial on Title VII employment discrimination claims).

Defendant argues that the instant action was filed for an improper purpose because of the following circumstances: 1) "it was filed a year after [the state court action] already premised on the Termination Letter;" 2) "the Complaint was a rehash of the [state court action] complaint"; and 3) "it targeted [defendant] in her individual capacity for an attorney demand letter sent to another attorney." (Def's Mem. (DE 18) at 10). On the present record, however, these circumstances alone are not sufficient to justify an award of Rule 11 sanctions, particularly where there is a legal

and factual basis for the claims asserted.  See Kunstler, 914 F.2d at 518.  Defendant has not demonstrated an intention on the part of plaintiff's counsel "so excessive," or claims of such "outrageous nature," to serve as "appropriate indicators of an improper purpose."  Id. at 519.

In sum, defendant has not demonstrated a basis for Rule 11 sanctions on the present record. Therefore, defendant's sanctions motion is denied.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss (DE 9) and motion for sanctions (DE 17) are DENIED.  Stay entered July 8, 2025, is lifted, and defendant must file a responsive pleading within 14 days of the date of this order, per Federal Rule of Civil Procedure 12(a)(4).

SO ORDERED, this the 4th day of March, 2026.

_____
LOUISE W. FLANAGAN
United States District Judge